IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NICOLETTE GUIDRY, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO.: 4:20-cv-00309 |
| § | |
| HOUSTON LIVESTOCK § | |
| SHOW AND RODEO INC., § | |
| § | |
| Defendant. § | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID DISTRICT COURT:

NOW COMES, Plaintiff, Nicolette Guidry, ("Plaintiff") filing this Original Complaint in which she is complaining of Defendants, Houston Livestock Show and Rodeo Inc., (hereinafter Defendant "HLSR"), in support of her causes of actions, Plaintiff would show this Honorable Court and Jury the following:

### NATURE OF THE CASE

1. This is a proceeding for civil enforcement of lawful rights secured by Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., as amended, prohibiting certain unlawful employment practices such as sexual harassment and workplace retaliation.

### JURISDICTION

2. The jurisdiction of this Honorable Court is invoked pursuant to 28 U.S.C. § 1331 because the issues in this case raise federal questions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., and as amended and pursuant to 28 U.S.C. § 1367.

## PARTIES

3.      Plaintiff is an individual and a resident of Houston, Texas. Plaintiff is an African American female and is a member of a group protected by Title VII and was at all relevant times an employee within the meaning of the applicable statute.

4.      Defendant, HLSR, is a business corporation. Defendant HLSR is located at P.O. Box 20070, Houston, TX 77225. Service of Defendant HLSR may be perfected by serving Defendant's HLSR's registered agent, CT Corporation System, who is located at 1999 Bryan St Ste 900, Dallas, TX 75201-3140 or any other place this registered agent can be found.

## VENUE

5.     Venue is proper in the Southern District of Texas, Houston Division because the causes of action alleged accrued within said district. This Court has jurisdiction over the causes of action alleged by Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

## VICARIOUS LIABILITY-RESPONDEAT SUPERIOR

6.     Whenever in this pleading it is alleged that Defendants did any act or thing, or failed to do any act or thing, it is meant that Defendants' officers, owners, servants, agents, employees, or representatives, workers did such act or thing, or failed to do such act or thing, or that such act or thing or omission was done in the course and scope of that person's employment at Defendants' and/or in the furtherance of Defendants' interests, or with the full authorization, permission, tolerance, and/or ratification of Defendants were done by an authorized member of management of  Defendants or was done in the normal routine of the accepted, tolerated, or permitted conduct, customs, and/or practices of Defendants' officers, owners, servants, agents, employees, and/or representatives.

## STATEMENT OF THE CASE

7. Plaintiff is alleging causes of action for of sexual harassment and workplace retaliation pursuant to Title VII of the Civil Rights Act.

## CONDITIONS PRECEDENT UNDER TITLE VII

8. All conditions precedent to this Honorable Court's jurisdiction under Title VII, as amended has occurred or has taken place. Plaintiff's Charge of Discrimination was filed within three hundred days of the actionable acts complained of herein. Further, Plaintiff's Original Complaint is being filed within ninety days of Plaintiff's receipt of her right to sue letter issued by the Equal Employment Opportunities Commission.

## FACTS

9. Plaintiff, Nicolette Guidry, an African American female, as known by everyone in the office, began working for Defendant HLSR on or about June 25, 2015. Plaintiff worked as an assistant manager for food and beverage. Plaintiff worked at HLSR with other food and beverage employees and managers including David Simpson ("Simpson"), Plaintiff's supervisor and manager. Plaintiff's duties often consisted of her working under Simpson in a managerial capacity, supervising employees, and keeping up with inventory. While employed with Defendant, Plaintiff was subjected to unwelcomed sexual acts by Simpson as were other female employees, to which Defendant HLSR was notified of. During the course of her employment, Plaintiff was also subjected to a sexually hostile and harassing environment and was treated unfairly. Some of the hostile and discriminative instances Plaintiff endured while working at Defendant HLSR are the following:

a. On or about July of 2015, Simpson started to make verbal comments to Plaintiff, including but not limited to insisting Plaintiff wear more dresses, Simpson referring to himself as the "Daddy" and Plaintiff as the "Momma", suggesting they need to "stick together".

b. On multiple occasions in September/October of 2015, Simpson would ask the Plaintiff to go into the liquor room (a very small room the size of a walk-in closet) under the disguise of company business, Simpson would then follow Plaintiff in the room, close the door, and turn off the lights. When the Plaintiff would ask him to turn the lights on, Simpson would do so as he laughed at the Plaintiff's discomfort.

c. In 2016, Simpson began to tell the Plaintiff that he loved her. Plaintiff in hopes of discouraging the behavior asked her fiancée to come into the office. Simpson stopped pressuring Plaintiff for a few weeks but shortly restarted the process. He would ask the Plaintiff if she thought certain committee members had large penises because they were tall. Simpson even went as far as to hug the Plaintiff from behind repeating to her that he loved her.

d. Plaintiff tried to remove herself from the uncomfortable situations created by Simpson by refusing to entertain his advances. Despite Plaintiff's attempts, Simpson would continue to create uncomfortable workspaces by asserting a multiplicity of inappropriate comments. Simpson would comment on bartender's body shapes, breasts sizes, butts, and the fits of their clothing.

e. On another occasion, Simpson descriptively recounted to Plaintiff a fellatio encounter of an employee, sharing details of how the employee does it, and how often she does it.

f. At least once in Simpson's office he lured Plaintiff into conversation under a business pretense and changed the subject into discussing dreams he had from the night before that involved Plaintiff. Simpson would try to entice Plaintiff into inquiring about the dream by telling her he can't tell her about the dream because it was "too graphic".

g. As a result of these incidents, Plaintiff filed grievances with HR on behalf of herself and other female workers that were victims of Simpson's sexual misconduct. In July 2017, upon Plaintiff speaking up for herself and others against Simpson, Plaintiff was made aware of more

workers with similar complaints and she was told of previous reports that had been made against Simpson.

h.      Eventually, Defendant HLSR called in an outside counsel and performed an investigation into the allegations, deeming termination of Simpson the appropriate remedy. Simpson was terminated on January 8, 2018 and the Executive Director, Mike Demarco, (Demarco) assigned Plaintiff as a temporary replacement to manage Defendant HLSR's Food and Beverage office.

i.       Plaintiff was not provided with any training on how to manage a bigger team or how to complete her job. Despite lacking the proper training Plaintiff thrived in her new position. Plaintiff began managing 34 employees and that number quickly grew to 158 employees by March, which was the time for the rodeo to begin.

j.       Plaintiff was the initial point of contact for HLSR's Food and Beverage office. Plaintiff began making the schedule, making sure payroll was prepared for approval, and keeping up with inventory and ordering necessities.

k.      Plaintiff successfully assigned supervisors, head bartenders, and helped with the vetting process when third party staffing companies were hired. Plaintiff fulfilled all the duties required as acting manager from January 8, 2018 until Defendant HLSR fired Plaintiff as an act of retaliation in April 12, 2018.

l.       Plaintiff was terminated even though HLSR's Food and Beverage department was operating more efficiently under the leadership of Plaintiff. Plaintiff was never reprimanded during her stay as acting manager. Demarco expressly stated his confidence in the work that the Plaintiff was now doing.

m.      Usually in Plaintiff's industry a group of 158 employees would be handled by three managers. Plaintiff was able to not only preform the task adequately but also excel at her duties despite the lack of support to carry out tasks.

n.     After the March 2018 show, Plaintiff became aware that she was accused of stealing tip money from the employees. That accusation is unfeasible as Plaintiff was the individual who stewarded in the policy of tip money being counted by at least three people. Plaintiff implemented and carried out this practice when she was appointed to acting manager after Simpson's termination by Defendant HLSR.

o.     Plaintiff, for the sake of moral, organized a group effort amongst the employees to save money for an end of the year party. Employees, eager to celebrate their accomplishments, would give Plaintiff 3-5 USD normally in change. Plaintiff then would hold on to this amount and even went as far as to report the collected tips to DeMarco in order to be compliant with company procedures. Defendant HLSR subsequently questioned Plaintiff through their HR department about the monetary amount being collected. Plaintiff explained majority of the money had been used as sanctioned to reserve the space for the end of the year event. Plaintiff provided all details as to the celebratory employee party to take place.

p.     Plaintiff used collected money to purchase alcohol and steak dinners for the employees along with the party, hoping to reward the employees for their service. Plaintiff decided to use her own money to reward the employees once the collected funds were exhausted.

q.     In that same meeting, Defendant HLSR questioned Plaintiff about jello shots that were given to Plaintiff after all shifts were over and the bars were closed. Plaintiff was acting in compliance with a request made by Defendant HLSR's employee supervisor, Troy King, to taste the jello shot. Defendant HLSR's HR department reported findings and Plaintiff was terminated for drinking the jello shot on the job.

r.     Defendant HLSR was known to throw parties for their employees on company grounds where alcohol was provided.

s.  After Plaintiff was terminated, Defendant skipped over more qualified African American employees to promote a Caucasian employee with junior status.

t.  Defendant has never hired any African American females for a permanent managerial position. The alleged retaliation facts asserted herein are not exhaustive.

## CAUSES OF ACTION

### A.  Title VII Sexual Harassment Against Defendant

10.  Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above and incorporates the same herein as though fully set forth. Employers are forbidden to discriminate against an employee because she is female. 42 U.S.C. § 2000e-2(a) & (m). Such discrimination includes unwelcome sexual advances verbal or physical conduct of a sexual nature when submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, or submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual. 29 C.F.R. § 1604.11 (a).

a.  A plaintiff makes out a prima facie case of quid pro quo sexual harassment by demonstrating she/he belongs to a protected class, was subjected to unwanted sexual harassment, the harassment was based on plaintiff's sex, and the harassing behavior affected a tangible aspect of the plaintiff's employment. Plaintiff meets all of these requirements.

b.  Defendant HLSR, through its agents, supervisors, or employees, including, but not limited to, DeMarco, Seymour, and Simpson engaged in unlawful sex discrimination by subjecting Plaintiff to unwelcomed sexual harassment.

c.  The above-described unwelcomed sexual harassment created an intimidating, oppressive, hostile and overtly offensive work environment, which interfered with Plaintiff's emotional, mental, and physical well-being.

d. As a result of the hostile and offensive work environment perpetrated by Defendants through its agents, supervisors, or employees, including but not limited to, DeMarco, Simpson, and Seymour, as well as from the failure by Defendant HLSR's to protect Plaintiff from further harassment, Plaintiff suffered severe emotional distress.

e. Defendant HLSR violated Title VII by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and omissions of DeMarco, Simpson, and Seymour, as described in the paragraphs above.

f. Defendant HLSR failed to comply with its statutory duty to promptly take all reasonable and necessary steps to eliminate sexual harassment from the workplace and to prevent it from occurring in the future.

g. As a direct and proximate result of Defendant HLSR's willful, knowing and intentional discrimination against Plaintiff through its agents, supervisors, or employees, including, but not limited to, DeMarco, Simpson, and Seymour, Plaintiff has suffered and will continue to experience pain and suffering, and extreme and severe mental anguish and emotional distress.

h. Due to the intolerant actions of the Defendants, Plaintiff has suffered damages for which she now sues seeking actual damages, including:

    a. Past lost pay;

    b. Future lost pay;

    c. Front pay;

    d. Future loss of benefits;

    e. Past mental anguish;

    f. Future mental anguish;

    g. Past emotional pain and suffering;

      h. Future emotional pain and suffering;

      i. Past inconvenience;

      j. Future inconvenience;

      k. Past loss of enjoyment of life;

      l. Future loss of enjoyment of life;

      m. Reduction in her standard of living for which she seeks compensatory damages in an amount to be determined by the court and jury; and

      n. All other damages allowed by law, including reasonable attorney's fees.

### B. *Title VII Workplace Retaliation Against Defendant*

11.    Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporates the same herein as though fully set forth. After Plaintiff began to speak up and complain about the sexual harassment incidents and was wrongfully accused of stealing tip money and wrongfully taking jello shots at work, Plaintiff was subsequently wrongfully discriminated and retaliated against leading to her termination. Each act of retaliation is in violation of Title VII's anti-retaliation provision, based on but not limited to the following:

      A. Termination;

      B. Refusal to hire;

      C. Denial of promotion;

      D. Threats;

      E. Unjustified negative evaluations or references; and

      F. Increased surveillance.

### ATTORNEYS' FEES

12.    Pursuant to Title VII, Plaintiff sues Defendant for all reasonable attorneys' fees and cost incurred in the prosecution of this suit.

## JURY DEMAND

13.     Plaintiff requests that this action be heard before a jury.

## DAMAGES

14.     Defendant's conduct constitutes violations of statutory law. Such unlawful conduct seriously affected Plaintiff in her occupation. Because of Defendant's unlawful conduct, Plaintiff has suffered, suffers and will continue to suffer humiliation, mental anxiety and stress along with other damages. Plaintiff has suffered direct injury as a proximate result of the unlawful discriminatory practices, policies and procedures of Defendants. Plaintiff seeks all general, special and incidental and consequential damages in an amount to be proved at trial. Because of Defendant's unlawful and tortious conduct, it has been necessary for Plaintiff to retain the undersigned attorneys to represent her in these causes of actions. Plaintiff has agreed to pay her attorneys' fees for the preparation and trial of these causes.

15.     Additionally, Plaintiff has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve her ability to earn a living. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages as shall be proven at trial.

16.     Further, Plaintiff seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendants. Plaintiff also seeks post-judgment interest at the maximum rate allowed by law in the event that the Defendants do not promptly tender damages assessed against them and to avoid unjustly enriching Defendants.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Nicolette Guidry, respectfully invokes the remedial powers of this Court, and prays that Defendant be cited to appear herein, and after trial by jury, this Court enters a judgment against Defendants:

a.         Declaring that the acts and practices complained of herein are in violation of the above applicable statutes;

b.         Enjoining and permanently restraining these violations of the above applicable statutes;

c.         Defendants be ordered to compensate Plaintiff for all losses and award her compensatory and punitive damages, reimburse, and make Plaintiff whole for any and all past, future loss, wage, and benefits Plaintiff would have received had it not been for Defendants' illegal action including, but not limited to, past lost pay, future loss wages, front pay and benefits, training, promotions, and seniority. Plaintiff further ask that he be awarded all benefits illegally loss from the present to the date of his retirement;

d.         Defendants be ordered to compensate Plaintiff for past and future mental anguish and humiliation;

e.         Awarding Plaintiff pre-judgment and post-judgment interest at the maximum legal rate;

f.         Reasonable attorneys' fees, with conditional awards in the event of appeal;

g.         Punitive damages in an amount above the minimum jurisdictional limit of the Court;

h.         Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action;

i.         The court grants such additional equitable and legal relief as is proper and just; and

j.         The court award to Plaintiff costs and expenses of this action and award to Plaintiff reasonable attorney fees according to law.

Respectfully submitted,

THE COX PRADIA LAW FIRM PLLC

By: */s/ Troy J. Pradia*
**Troy J. Pradia**
State Bar No.:  24011945
Fed. Bar No. 30260
1415 North Loop West, Ste 305
Houston, Texas 77008
Email: tjp@coxpradialaw.com
ATTORNEY FOR PLAINTIFF